## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| SMILEDIRECTCLUB, INC., *et al.*,[1] | ) |
| | ) Case No. 23-90786 (CML) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

### DEBTORS' APPLICATION FOR
### ENTRY OF AN ORDER AUTHORIZING
### THE RETENTION AND EMPLOYMENT OF CENTERVIEW
### PARTNERS LLC AS INVESTMENT BANKER FOR THE DEBTORS
### AND DEBTORS IN POSSESSION EFFECTIVE AS OF SEPTEMBER 29, 2023

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this application was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this application was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application (this "Application"):

### Relief Requested

1.  The Debtors seek entry of an order, substantially in the form attached hereto (the "Order") (a) authorizing the Debtors to retain and employ Centerview Partners LLC ("Centerview") as their investment banker, effective as of September 29, 2023 (the "Petition Date"), in accordance with the terms and conditions set forth in the engagement letter dated

---

1   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SmileDirectClub. The location of Debtor SmileDirectClub, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1530 Antioch Pike, Antioch, Tennessee 37013.

September 27, 2023 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit A**,[2] (b) approving the terms of Centerview's employment and retention including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Letter, (c) modifying certain time-keeping requirements as set forth the below, and (d) granting related relief.  In support of this Application, the Debtors submit the *Declaration of Ryan Kielty in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Centerview Partners LLC as Investment Banker for the Debtors and Debtors in Possession Effective as of the Petition Date* (the "Kielty Declaration"), attached hereto as **Exhibit B**.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157 (b).  The Debtors confirm their consent to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 327(a), 328(a), and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1, 2016-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

## Background

5.     On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On October 2, 2023, the Court entered an order [Docket No. 28] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  On October 13, 2023, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 138].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.     Additional information regarding the Debtors' businesses, capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Troy Crawford, Chief Financial Officer for SmileDirectClub, Inc., in Support of First Day Motions of Debtors and Debtors in Possession* Docket No. 4 (the "First Day Declaration") incorporated herein by reference.

## Centerview's Qualifications

7.     Established in 2006, Centerview is an independent investment banking firm providing financial advisory services, including mergers and acquisitions, financing, and restructuring advice, across a broad range of industries.  Centerview serves a diverse set of clients around the world from its offices in New York, San Francisco, Menlo Park, London, and Paris. Centerview's Debt Advisory and Restructuring Group, which was founded in 2011, has extensive experience in designing and managing complex restructuring processes among a wide range of stakeholders, and a demonstrated track record of designing, negotiating and implementing

3

amendments, exchange offers, financings, distressed merger and acquisition transactions and out-of-court and in-court restructurings. Centerview and its principals have advised debtors, lenders, committees, equity holders, and acquirors in many complex financial reorganizations. Centerview's professionals have collectively advised on transactions representing over $300 billion in restructured debt.

8. The Debtors have determined in the exercise of their sound business judgment that the size and complexity of their businesses requires them to employ an investment banker with knowledge of the Debtors' industry and business and experience with the chapter 11 process. Centerview has such knowledge and is well qualified to provide its services to the Debtors in these chapter 11 cases. The Debtors' decision to employ and retain Centerview will assist the Debtors in pursuing their contemplated restructuring transactions in a cost-effective, efficient, and timely manner.

9. Centerview's professionals are providing or have provided financial advisory, investment banking, and other services in connection with the in-court restructuring of numerous companies, including the following recent cases in this and other districts: *In re Ultra Petroleum Corp.*, No. 20-32631 (MI) (Bankr. S.D. Tex. June 29, 2020); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Nov. 14, 2018); *In re SVB Fin. Grp.*, No. 23-10367 (MG) (Bankr. S.D.N.Y. Apr. 28, 2023); *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Sept. 16, 2022); *In re Enjoy Tech., Inc.*, No. 22-10580 (JKS) (Bankr. D. Del. Aug. 9, 2022).[3] Centerview's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including, among others: Cloud Peak Energy,

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

J. C. Penney Company, Neovia Logistics, Trinseo, Designer Brands, Alcatel, and The Dhanani Group.

### **Scope of Services**[4]

10.    The parties have entered into the Engagement Letter, which governs the current relationship between Centerview and the Debtors.  The terms and conditions of the Engagement Letter were negotiated in good faith and at arm's-length and reflect the parties' mutual agreement as to the substantial efforts and resources that have been and will continue to be required in connection with Centerview's engagement.

11.    Centerview has performed and will continue to perform the following financial advisory and investment banking services, among others, pursuant to and in accordance with the Engagement Letter:[5]

      a.     <u>General Financial Advisory and Investment Banking Services</u>:

          i.    familiarize itself with the business, operations, properties, financial condition and prospects of the Debtors;

        ii.    review the Debtors' financial condition and outlook;

      iii.    assist in the development of financial data and presentations to the Debtors' Board of Directors, various creditors and other parties;

      iv.    evaluate the Debtors' debt capacity and capital structures alternatives;

      v.    participate in negotiations among the Debtors, and related creditors, suppliers, lessors and other interested parties with respect to any of the transactions contemplated by the Engagement Letter; and

---

[4]    To the extent that there is any conflict between the actual terms of the Engagement Letter or the Indemnification Provisions (as such may be modified by order of the Court) and any description or summary of the same herein, the actual terms of the Engagement Letter or the Indemnification Provisions (as such may be modified by order of the Court) shall control, as applicable.

[5]    The summary of the services provided herein is included for illustrative purposes only.  To the extent the services described herein conflict with the Engagement Letter, the Engagement Letter shall control in all respects.

vi.   perform such other financial advisory services as may be specifically agreed upon in writing by the Debtors and Centerview.

b.   <u>Restructuring Services</u>:

i.   analyze various Restructuring[6] scenarios and the potential impact of these scenarios on the value of the Debtors; and the recoveries of those stakeholders impacted by the Restructuring;

ii.   provide financial and valuation advice and assistance to the Debtors in developing and seeking approval of a Plan;

iii.   provide financial advice and assistance to the Debtors in structuring any new securities to be issued pursuant to the Restructuring;

iv.   assist the Debtors and/or participate in negotiations with entities or groups affected by the Restructuring; and

v.   if requested by the Debtors, participate in hearings before the bankruptcy court with respect to matters upon which Centerview has provided advice, including as relevant, coordinating with the Debtors and their advisors with respect to testimony in connection therewith.

---

[6]   As used in the Engagement Letter and this Application, the term "<u>Restructuring</u>" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or any material portion of the liabilities of the Debtors (or their direct or indirect subsidiaries), and obligations owed to the Debtors (or their direct or indirect subsidiaries) from other parties (or their affiliates), however such result is achieved, whether in one or more transactions or a series of transactions, including, without limitation, through a plan of reorganization ("<u>Plan</u>") going effective or conversion to chapter 7 or any other liquidation of the Debtors confirmed or approved in connection with a Bankruptcy Case, an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Debtors' debt instruments, an issuance of new securities, raising of new debt or equity capital, or a sale, disposition or other transfer (regardless of form), including to existing creditors of the Debtors, of all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Debtors, it being understood and agreed that consummation of a Plan will be a Restructuring in any event.

  c.  <u>Financing Services</u>:[7]

    i.  provide financial advice and assistance to the Debtors in structuring and effecting a Financing,[8] identifying potential Investors, and, at the Debtors' request, contacting such Investors; and

    ii.  assist in the arranging of a Financing, the due diligence process, and negotiating the terms of any proposed Financing.

  d.  <u>Sale Services</u>:

    i.  provide financial advice and assistance to the Debtors in connection with a Sale,[9] identifying potential acquirors and, at the Debtors' request, contacting such potential acquirors; and

    ii.  assist the Debtors and/or participate in negotiations with potential acquirors.

12. If the Debtors request additional services from Centerview that are not contemplated in the Engagement Letter, such services and the fees for such services will be mutually agreed upon by Centerview and the Debtors, in writing, in advance. Additionally, if the parties amend the Engagement Letter, any such amendments will be subject to the Court's approval.

**Professional Compensation**

13. Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval

---

[7] It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Centerview to underwrite, place or purchase any securities, in a financing or otherwise, which commitment, if any, shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to a Financing.

[8] As used in the Engagement Letter and this Application, the term "<u>Financing</u>" means a public or private issuance, sale or placement of equity, equity-linked or debt securities, instruments or obligations of the Debtors with one or more lenders and/or investors (each such lender or investor, an "<u>Investor</u>"), or any loan, rights offering or other financing, including any "debtor in possession financing" ("<u>DIP Financing</u>") or "exit financing" in connection with a case under the Bankruptcy Code.

[9] As used in the Engagement Letter and this Application, the term "<u>Sale</u>" means any transaction or series of related transactions involving an acquisition, merger, consolidation, or any other business combination pursuant to which a majority of the business, equity or assets of Debtor SmileDirectClub, Inc. are, directly or indirectly, sold, purchased or combined with another entity or company.

and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any applicable orders of the Court, consistent with the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"). Further, because the Debtors seek approval of Centerview's proposed compensation structure pursuant to section 328(a) of the Bankruptcy Code, the Debtors believe that Centerview's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and should not constitute a "bonus" under applicable law.

14.    In summary, the Fee and Expense Structure provides for the following compensation to Centerview:[10]

(a)    A monthly financial advisory fee of $100,000 (the "Monthly Advisory Fee"), the first of which was due and paid by the Debtors upon execution of that certain letter agreement dated as of June 1, 2023 (the "Original Agreement") and on each monthly anniversary thereof, then $150,000, the first of which was due on the third monthly anniversary of the date of the Original Agreement and each monthly anniversary thereafter during the term of Centerview's engagement. The amount of any Monthly Advisory Fee paid to Centerview will be 50 percent credited after three (3) months (but only once) against any Transaction Fee (as defined herein) payable to Centerview subject to subparagraph 2(b) of the Engagement Letter.

(b)    If at any time during the term of Centerview's engagement or within the twelve full months following the termination of Centerview's engagement (including the term of the engagement, the "Fee Period"), (1) the Debtors consummate any Restructuring or Sale or (2) the Debtors enter into a binding agreement in principle, definitive agreement or Plan to effect a Restructuring or Sale, and at any time (including following the expiration of the Fee Period), any Restructuring or Sale is consummated, Centerview shall be entitled to receive a transaction fee (a "Transaction Fee"), contingent upon the consummation of a Restructuring or Sale and payable at the closing thereof equal to $7,000,000 less any credits from the Monthly Advisory Fee or the Financing Fee. Notwithstanding anything to the contrary in subparagraph 2(b) of the Engagement Letter, in connection with any Restructuring or Sale that is intended to be effected, in whole or in part,

---

[10]    The summary of the Fee and Expense Structure provided herein is included for illustrative purposes only. To the extent the Fee and Expense Structure described herein conflict with the Engagement Letter, the Engagement Letter shall control in all respects.

as a prepackaged plan of reorganization anticipated to involve the solicitation of acceptances of such plan in compliance with the Bankruptcy Code, by or on behalf of the Debtors, from holders of any class of the Debtors' securities, indebtedness or obligations (a "Prepackaged Plan") the Transaction Fee shall be payable (x) 50 percent upon receipt of votes from the Debtors' creditors necessary to confirm such Prepackaged Plan and (y) the balance shall be payable upon consummation of such Restructuring or Sale.

(c)     If at any time during the Fee Period, (1) the Debtors consummate any Financing or (2) the Debtors receive and accept written commitments for one or more Financings (the execution by a potential financing source and the Debtors of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment), and at any time (including following the expiration of the Fee Period) any Financing is consummated, the Debtors will pay to Centerview the following (each a "Financing Advisory Fee"):

　　i.     1.00 percent of the aggregate amount of financing commitments of any indebtedness issued that is secured by a first lien, including any DIP Financing;

　　ii.    2.00 percent of the aggregate amount of financing commitments of any indebtedness issued that (x) is secured by a second or junior lien, (y) is unsecured, and/or (z) is subordinated; and

　　iii.   3.00 percent of the aggregate amount of financing commitments of any equity or equity-linked securities or obligations issued.

(d)     The amount of any Financing Advisory Fee, excluding any Financing Advisory Fee related to DIP Financing, paid to Centerview will be 50% credited against any Transaction Fee payable to Centerview pursuant to subparagraph 2(b) of the Engagement Letter. For the avoidance of doubt, no Financing Advisory Fees will be due relating to Financings (a) provided by the Debtors' founders or management team or (b) relating to the portion of a conversion or refinancing of a Financing procured by Centerview into another Financing procured by Centerview (*e.g.*, the conversion of a bridge into an exit financing).

(e)     Notwithstanding anything in subparagraph 2(c) of the Engagement Letter to the contrary, a Financing Fee earned in connection with a DIP Financing shall be due upon the Debtors' consummation of the debtor-in-possession financing.

(f)     In addition to the fees payable by the Debtors to Centerview hereunder, the Debtors shall, whether or not any Restructuring, Financing and/or Sale shall

9

be proposed or consummated, reimburse Centerview on a periodic basis for its reasonable travel and other reasonable out-of-pocket expenses (including all reasonable fees, disbursements and other charges of counsel to be retained by Centerview and of other consultants and advisors retained by Centerview with the Debtors' consent), incurred in connection with, or arising out of Centerview's activities under or contemplated by the Engagement Letter, during the term of the Engagement Letter; *provided*, however, that Centerview shall obtain the prior written consent of the Debtors prior to incurring any out-of-pocket expenses exceeding $35,000. The Debtors shall also reimburse Centerview, at such times as Centerview shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to, or contemplated in the Engagement Letter.  Such reimbursements shall be made promptly upon submission by Centerview of statements for such expenses.  It is understood and agreed that nothing contained herein shall be deemed to limit in any manner the indemnification, expense reimbursement and other obligations of the Debtors contained in the Indemnification Provisions (defined below).

(g)    As part of the overall compensation payable to Centerview under the terms of the Engagement Letter, the Debtors agree to the indemnification, contribution, and other provisions (the "Indemnification Provisions") attached to the Engagement Letter as Annex A.

15.    The Debtors submit that the Fee and Expense Structure is consistent with, and typical of, compensation arrangements between debtors and investment bankers.  The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to fairly compensate Centerview for its work in these cases.

16.    Centerview's restructuring expertise as well as its capital markets knowledge, financing skills, and mergers and acquisitions expertise, some or all of which the Debtors have and may continue to require during the term of Centerview's engagement, will inure to the benefit of the Debtors and their estates, and were important factors in determining the Fee and Expense Structure.  Further, the Debtors believe that the ultimate benefit of Centerview's services derives in substantial part from Centerview's expertise and experience and cannot be measured by reference to the number of hours Centerview's professionals spend performing such services. Indeed, the Debtors and Centerview agreed upon the Fee and Expense Structure in anticipation

that a substantial commitment of professional time and effort would be required of Centerview and its professionals in connection with these chapter 11 cases and in light of the fact that such commitment would foreclose other opportunities for Centerview, and the actual time and commitment required of Centerview and its professionals to perform its services under the Engagement Letter would vary substantially from week to week and month to month, creating "peak load" issues for Centerview.  Therefore, the Debtors believe that the Fee and Expense Structure is reasonable regardless of the number of hours Centerview's professionals spend performing their services and that in no event should the deferred component embodied in any fee to which Centerview is entitled to under the Engagement Letter be considered a "bonus" or fee enhancement.

### Centerview's Disinterestedness

17.    Centerview has informed the Debtors that, to the best of Centerview's knowledge, information, and belief, except as disclosed in the Kielty Declaration, Centerview:  (a) has no material connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee; (b) does not hold any interest materially adverse to the Debtors' estates in these chapter 11 cases; and (c) believes it is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.   Accordingly, Centerview is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

18.    Prior to the Petition Date and pursuant to the Original Agreement and the Engagement Letter, the Debtors paid Centerview (a) $650,000.00 in Monthly Advisory Fees, which payments represented (i) payment of the Monthly Advisory Fees for June 2023 through September 2023 and (ii) a $150,000.00 advance for the Monthly Advisory Fee for October 2023 (such advance, the "Retainer"), and (b) $3,624.36 as reimbursement for Centerview's reasonable

and necessary expenses incurred through the Petition Date.  Centerview shall apply any remaining amounts of the Retainer as a credit towards postpetition fees and expenses after Court approval of such postpetition fees and expenses.  Centerview has received no other compensation from the Debtors pursuant to the Original Agreement or the Engagement Letter.  As of the Petition Date, Centerview did not hold a prepetition claim against the Debtors for fees or expenses related to services rendered in connection with the Original Agreement or the Engagement Letter.

19.    In addition, as set forth in the Kielty Declaration, if any new material facts or relationships bearing on the matters described herein are discovered or arise during the pendency of these chapter 11 cases, Centerview will use reasonable efforts to provide the Court with a supplemental declaration disclosing such new material facts or relationships, as required by Bankruptcy Rule 2014(a).

20.    Centerview has informed the Debtors that it has not shared or agreed to share any of its compensation from the Debtors with any other person other than as permitted in section 504 of the Bankruptcy Code.

### No Duplication of Services

21.    The services that Centerview provides will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Centerview will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these chapter 11 cases to avoid unnecessary duplication of services.

### Applications for Compensation and Time Keeping

22.    The Debtors request that Centerview and its professionals should be excused from maintaining time records as set forth in Bankruptcy Rule 2016(a) in connection with the services to be rendered to the Debtors during these chapter 11 cases pursuant to the Engagement Letter, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the

Bankruptcy Local Rules, or any applicable orders of the Court regarding submission and approval of fee applications.  The Debtors and Centerview believe this waiver is appropriate in light of the services that Centerview will render to the Debtors and the Fee and Expense Structure contemplated by the Engagement Letter.  Centerview still intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred.  Such applications will include time records setting forth, in a summary format, a description of the services that each professional renders and the amount of time that such individual spent on each date in rendering services on behalf of the Debtors.

23.    Because it is not the general practice of investment bankers, including Centerview, to keep contemporaneous detailed time records similar to those customarily kept by attorneys or provide or conform to a schedule of hourly rates for its professionals, Centerview does not ordinarily maintain contemporaneous time records in one-tenth (0.1) of an hour increments, or provide or conform to a schedule of hourly rates for its professionals.  Notwithstanding that Centerview does not charge for its services on an hourly basis, Centerview requests that it be permitted to maintain time records in half-hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professionals rendering such services on behalf of the Debtors.  Centerview will also maintain records in support of any costs and expenses incurred in connection with its services.  The Debtors will pay Centerview's applications for compensation and expenses pursuant to the terms of the Engagement Letter, subject to approval by the Court.

**Indemnification and Contribution Provisions**

24.    As part of the overall compensation payable to Centerview under the terms of the Engagement Letter, the Debtors agreed to certain indemnification and related obligations, which appear in the Indemnification Provisions.    The Debtors and Centerview believe that the

Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both in- and out-of-court, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

25.    The terms and conditions of the Engagement Letter and Indemnification Provisions were negotiated by the Debtors and Centerview at arm's length and in good faith.  The Debtors' obligations under the Indemnification Provisions, subject to the modifications set forth in the Order, and viewed in conjunction with the other terms of Centerview's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and their creditors.  As part of this Application, the Debtors request that the Court approve the Indemnification Provisions, as modified in the Order.

## Basis for Relief

## I.    The Debtors Should be Permitted to Retain and Employ Centerview on the Terms in the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code.

26.    The Debtors seek approval of the retention and employment of Centerview pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Section 327(a) of the Bankruptcy Code, in turn, authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because

of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

27.    Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions.   As the U.S. Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

28.    Additionally, Bankruptcy Rule 2016 and Bankruptcy Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Bankruptcy Local Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue.  However, Bankruptcy Local Rule 2016-2(h) allows a retained professional to request a waiver of these requirements for cause.

29.    The Court's approval of the Debtors' retention of Centerview in accordance with the terms and conditions of the Engagement Letter is warranted.  As discussed above and in the Kielty Declaration, Centerview satisfies the disinterestedness standard in section 327(a) of the

Bankruptcy Code.[11]   Engaged prepetition, Centerview has been assisting the Debtors for a considerable period of time prior to the commencement of these chapter 11 cases and has already committed a significant amount of time and effort.  Centerview is needed postpetition to continue to assist with negotiations, to provide expert advice and testimony regarding financial matters related to the proposed transactions, and to enable the Debtors to discharge their duties as debtors and debtors in possession.  Centerview's professionals have extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings.  Centerview has become familiar with the Debtors' business operations, capital structure, financing documents, and other material information and is able to assist the Debtors in their restructuring efforts.  The Debtors believe that Centerview is well qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.  Further, as detailed above, Centerview does not hold or represent an interest adverse to the estate and is disinterested.

30.   The Fee and Expense Structure is consistent with Centerview's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.  In addition, the Debtors believe that the Fee and Expense Structure is market-based, fair, and reasonable under the

---

[11]   Bankruptcy Rule 2014(a) requires that an application must be made for retention of professionals pursuant to section 327 of Bankruptcy Code.  Under Bankruptcy Rule 2014(a), such application shall: "state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Additionally, the application "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections" to the parties in interest listed above.  Fed. R. Bankr. P. 2014.  Here, Bankruptcy Rule 2014 is satisfied by the contents of this Application, and the Kielty Declaration.

16

standards set forth in section 328(a) of the Bankruptcy Code.  The Fee and Expense Structure reflects Centerview's commitment to the variable level of time and effort necessary to perform the services contemplated by the Engagement Letter, Centerview's particular expertise, and the market prices for Centerview's services for engagements of this nature both out-of-court and in a chapter 11 context.  The Fee and Expense Structure appropriately reflects:  (a) the nature and scope of services to be provided by Centerview; (b) Centerview's substantial experience with respect to investment banking services; and (c) the fee structures typically utilized by Centerview and other leading investment banks and financial advisors who do not bill their clients on an hourly basis.

31.    As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules and any other applicable procedures and orders of the Court, with certain limited modifications.

32.    The requirements of Bankruptcy Local Rule 2016-2(d) should be tailored to appropriately reflect Centerview's engagement and its compensation structure.  Centerview has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis.  Additionally, it is not the general practice of investment banking firms, such as Centerview, to keep detailed time records similar to those customarily kept by attorneys.  As discussed above, however, Centerview's restructuring personnel will keep reasonably detailed summary time records in one-half hour increments and will submit, with any interim or final fee application, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering the services, the

17

category of services rendered and the total amount of compensation sought by Centerview.  As such, the Debtors request modification of the requirements pursuant to Bankruptcy Local Rule 2016-2(h).

**II.    The Indemnification and Contribution Terms of the Engagement Letter Are Appropriate.**

33.    The Indemnification Provisions in the Engagement Letter were fully negotiated between the Debtors and Centerview.  The Debtors and Centerview believe that the indemnification provisions in the Engagement Letter are customary and reasonable for investment banking engagements both out-of-court and in chapter 11 cases.  Courts in this jurisdiction have approved and implemented similar indemnification arrangements.  *See, e.g.*, *In re Ultra Petroleum Corp., et al.*, No. 23-32631 (MI) (Bankr. S.D. Tex. June 4, 2020); *In re EXCO Resources*, No. 18-30155 (MI) (Bankr. S.D. Tex. Feb. 2, 2018); *In re Cobalt International Energy, Inc.*, No. 17-36709 (MI) (Bankr. S.D. Tex. Jan. 11, 2018); *In re Ultra Petroleum Corp., et al.*, No. 16-32202 (MI) (Bankr. S.D. Tex. July 20, 2016); *In re Energy XXI LTD, et al.*, 16-31928 (Bankr. S.D. Tex. July 1, 2016).  The terms of the indemnification provisions are reasonable and customary and should be approved in these chapter 11 cases.

**III.    The Retention of Centerview Is Critical to the Debtors' Success.**

34.    The retention of Centerview is in the best interests of all parties in interest in these chapter 11 cases.  Centerview has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  Further, Centerview is intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banking professionals who have served them in the months leading up to the Petition Date.  If the Debtors were forced to

engage a new investment banker who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of Centerview's extensive engagement, such change would mandate the commitment of significant resources to educate a replacement. As discussed above, based on services performed to date, Centerview has been integral to preparing the Debtors for these chapter 11 cases.

35.     The Debtors have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules to support entry of an order authorizing the Debtors to retain and employ Centerview in these chapter 11 cases on the terms described herein and in the Engagement Letter.

## **Notice**

36.     The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Committee; (c) the trustee under the Convertible Notes and counsel thereto; (d) the agent under the HPS Credit Facility; (e) counsel to the DIP Lenders; (f) the agent under the DIP Facility; (g) the office of the attorney general for each of the states in which the Debtors operate; (h) the Office of the United States Attorney for the Southern District of Texas; (i) the state attorneys general for states in which the Debtors conduct business; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice is required.

The Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  October 27, 2023
Antioch, Tennessee

_/s/ Troy Crawford_
Troy Crawford,
SmileDirectClub, Inc.
Chief Financial Officer

**<u>Certificate of Service</u>**

       I certify that on October 27, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                           */s/ Rebecca Blake Chaikin*
                                           Rebecca Blake Chaikin

## Exhibit A

**Engagement Letter**

Centerview Partners LLC
31 West 52nd Street
New York, NY 10019

September 27, 2023

CONFIDENTIAL

SmileDirectClub, Inc.
414 Union Street
8th Floor
Nashville, Tennessee, 37219

Dear Troy Crawford:

This amended and restated letter agreement (the "Agreement") confirms the terms under which Centerview Partners LLC ("Centerview") has been engaged by SmileDirectClub, Inc. and its subsidiaries (collectively, the "Company") to act as its financial advisor and investment banker with respect to a possible Restructuring, Financing, and/or Sale (each as defined below) and with respect to such other financial matters as to which the Company and Centerview may agree in writing during the term of this engagement. For purposes hereof, the term "Company" also includes any entity that the Company may form or invest in to consummate a Restructuring, Financing, and/or Sale, and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company, whether pursuant to a Plan (as defined below) or otherwise. If appropriate in connection with performing its services hereunder, Centerview may utilize the services of one or more of its affiliates, in which case references herein to Centerview shall include, as applicable, such affiliates. The terms of this Agreement shall apply to all services provided by Centerview in connection with the matters contemplated by herein, including those provided prior to the date of this Agreement.

As used herein, the term "Restructuring" shall mean any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or any material portion of the liabilities of the Company (or its direct or indirect subsidiaries), and obligations owed to the Company (or its direct or indirect subsidiaries) from other parties (or its affiliates), however such result is achieved, whether in one or more transactions or a series of transactions, including, without limitation, through a plan of reorganization (a "Plan") going effective or conversion to Chapter 7 or any other liquidation of the Company confirmed or approved in connection with a case (a "Bankruptcy Case") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "Bankruptcy Code"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments, an issuance of new securities, raising of new debt or equity capital, or a sale, disposition or other transfer (regardless of form), including to existing creditors of the Company, of all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Company, it being understood and agreed that consummation of a Plan will be a Restructuring in any event.

As used herein, the term "Financing" shall mean a public or private issuance, sale or placement of equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors (each such lender or investor, an "Investor"), or any loan, rights offering or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code.

For purposes of this Agreement, the term "Sale" shall mean any transaction or series of related transactions involving an acquisition, merger, consolidation, or any other business combination pursuant to which a majority of the business, equity or assets of the Company are, directly or indirectly, sold, purchased or combined with another entity or company.

Notwithstanding the above and anything in section 2, a Restructuring, Financing, and Sale will not include (1) a transaction within 180 days of the date of this Agreement with the holders of convertible note obligations under the indenture, dated February 9, 2021, between SmileDirectClub, Inc. and Wilmington Trust, National Association, as Trustee (the "Indenture" and the holders thereunder, the "Convertible Noteholders"), on substantially identical terms as proposed in the Form 8-K dated March 27, 2023 (such prior proposal, the "Prior Convertible Proposal") or (2) any amendment to the loan agreement, dated April 27, 2022, between SDC U.S. SmilePay SPV, as borrower, SmileDirectClub, LLC, as seller and servicer, and HPS Investment Partners, LLC, as administrative agent and collateral agent, substantially on the terms presently under discussion and negotiation by the Company and its advisors as of the date of this Agreement (the "HPS Proposal"), and in either case no Transaction Fee or Financing Fee will be payable to Centerview on account of the Company pursuing or consummating a Restructuring, Financing, or Sale substantially on the terms of the Prior Convertible Proposal or the HPS Proposal.

1.  Centerview, as financial advisor and investment banker, will perform the following financial advisory and investment banking services:

    a.  General Financial Advisory and Investment Banking Services.  To the extent requested by the Company, Centerview shall:

        i.  familiarize ourselves with the business, operations, properties, financial condition and prospects of the Company;

        ii.  review the Company's financial condition and outlook;

        iii.  assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other parties;

        iv.  evaluate the Company's debt capacity and capital structures alternatives;

        v.  participate in negotiations among the Company, and related creditors, suppliers, lessors and other interested parties with respect to any of the transactions contemplated by this Agreement; and

        vi.  perform such other financial advisory services as may be specifically agreed upon in writing by the Company and Centerview.

b.      Restructuring Services.  To the extent requested by the Company, Centerview shall:

   i.      analyze various Restructuring scenarios and the potential impact of these scenarios on the value of the Company; and the recoveries of those stakeholders impacted by the Restructuring;

   ii.     provide financial and valuation advice and assistance to the Company in developing and seeking approval of a Plan

   iii.    provide financial advice and assistance to the Company in structuring any new securities to be issued pursuant to the Restructuring;

   iv.     assist and/or participate in negotiations with entities or groups affected by the Restructuring; and

   v.      if requested by the Company, participate in hearings before the bankruptcy court with respect to the matters upon which Centerview has provided advice, including, as relevant, coordinating with the Company and its advisors with respect to testimony in connection therewith.

c.      Financing Services.  To the extent requested by the Company, Centerview shall:

   i.      provide financial advice and assistance to the Company in structuring and effecting a Financing, identifying potential Investors and, at the Company's request, contacting such Investors; and

   ii.     assist in the arranging of a Financing, the due diligence process and negotiating the terms of any proposed Financing.

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Centerview to underwrite, place or purchase any securities, in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to a Financing.

d.      Sale Services.  To the extent requested by the Company, Centerview shall:

   i.      provide financial advice and assistance regarding a Sale, identifying potential acquirors and contacting such potential acquirors; and

   ii.     assist and/or participate in negotiations with potential acquirors.

In rendering its services hereunder, Centerview is not assuming any responsibility for the Company's underlying business decision to pursue any business strategy or to effect any Restructuring, Financing, and/or Sale. The Company agrees that Centerview shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions. The Company acknowledges that Centerview is not providing any

3

advice on tax, legal, regulatory or accounting matters, and the Company agrees that it will seek and rely on the advice of its own professional advisors for such matters, and will make an independent decision with respect to the matters that are the subject of this engagement based on such advice.

In order to coordinate effectively the Company's and Centerview's activities to effect a Restructuring, Financing, and/or Sale the Company will promptly inform Centerview of any discussions, negotiations or inquiries regarding a possible Restructuring, Financing, and/or Sale (including any such discussions, negotiations or inquiries that have occurred in the six month period prior to the date of this Agreement).

The Company shall make available to Centerview all information in its possession concerning the business, assets, operations, financial condition and prospects of the Company that Centerview reasonably requests in connection with the services to be performed for the Company hereunder, and shall provide Centerview with reasonable access to the Company's officers, directors, employees, independent accountants, and counsel, and other advisors, agents and other representatives of the Company as Centerview deems appropriate. To the best of the Company's knowledge, all information furnished by or on its behalf to Centerview pertaining to the Company, when delivered, will be accurate and complete in all material respects. In addition, the Company agrees that it will promptly notify Centerview of any material event or change in the business affairs, condition (financial or otherwise) of the Company that occurs during the term of our engagement hereunder, or if it learns of any material inaccuracy or misstatement in, or material omission from, any information theretofore delivered to Centerview. The Company understands and agrees that, in performing our services hereunder, Centerview (a) will be using and relying on publicly available information and on materials, data and other information furnished to Centerview by the Company and other parties, (b) is entitled to assume and rely upon the accuracy and completeness of such publicly available information and the other information so furnished without having independently verified the same, and (c) does not assume any responsibility for the accuracy or completeness of such information. Centerview will not conduct an independent evaluation or appraisal of the assets or liabilities (including any contingent, derivative or off-balance sheet assets or liabilities) of the Company, or advise or opine on any solvency or viability issues, nor will it make an inspection of the properties or assets of the Company. With respect to any forecasts or projections that may be furnished to Centerview or discussed with the Company, Centerview will assume that they have been reasonably prepared on bases reflecting the best then currently available estimates and judgments of the management of the Company as to the matters covered thereby. In connection with the services described above, the Company authorizes Centerview to transmit any memorandum prepared by the Company describing the Company and its assets, properties or businesses in connection with a Sale or a Financing to potential parties to a Sale or Financing. The Company will be solely responsible for the contents of this memorandum.

2.   As compensation for our services, the Company agrees to pay Centerview in cash, by wire transfer of immediately available funds when due, the following fees:

   a.   A monthly financial advisory fee of $100,000, the first of which was due and paid by the Company upon execution of that certain letter agreement dated as of June 1, 2023, by and among Centerview, Ropes & Gray LLP, and the Company (the "Original Agreement") and on the monthly anniversary thereof, then $150,000,

the first of which shall be due and paid by the Company on the third monthly anniversary of the date of the Original Agreement and each monthly anniversary thereafter during the term of this engagement (the "Monthly Advisory Fee"). The amount of any Monthly Advisory Fee paid to Centerview will be 50% credited after 3 months (but only once) against any Transaction Fee payable to Centerview pursuant to subparagraph 2(b).

b.    If at any time during the term of this engagement or within the twelve full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (1) the Company consummates any Restructuring or Sale or (2) the Company enters into a binding agreement in principle, definitive agreement or Plan to effect a Restructuring or Sale, and at any time (including following the expiration of the Fee Period), any Restructuring or Sale is consummated, Centerview shall be entitled to receive a transaction fee (a "Transaction Fee"), contingent upon the consummation of a Restructuring or Sale and payable at the closing thereof equal to $7,000,000 less any credits from the Monthly Advisory Fee and the Financing Fee. Notwithstanding anything to the contrary in this subparagraph 2(b), in connection with any Restructuring or Sale that is intended to be effected, in whole or in part, as a prepackaged plan of reorganization anticipated to involve the solicitation of acceptances of such plan in compliance with the Bankruptcy Code, by or on behalf of the Company, from holders of any class of the Company's securities, indebtedness or obligations (a "Prepackaged Plan") the Transaction Fee shall be payable (x) 50% upon receipt of votes from the Company's creditors necessary to confirm such Prepackaged Plan and (y) the balance shall be payable upon consummation of such Restructuring or Sale.

c.    If at any time during the Fee Period, (1) the Company consummates any Financing or (2) the Company receives and accepts written commitments for one or more Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment), and at any time (including following the expiration of the Fee Period) any Financing is consummated, the Company will pay to Centerview the following (each a "Financing Fee"):

    i.    1.00% of the aggregate amount of financing commitments of any indebtedness issued that is secured by a first lien, including any debtor-in-possession ("DIP") financing;

    ii.   2.00% of the aggregate amount of financing commitments of any indebtedness issued that (x) is secured by a second or junior lien, (y) is unsecured and/or (z) is subordinated;

    iii.  3.00% of the aggregate amount of financing commitments of any equity or equity-linked securities or obligations issued; and

The amount of any Financing Fee, excluding any Financing Fee related to DIP financing, paid to Centerview will be 50% credited against any Transaction Fee payable to Centerview pursuant to subparagraph 2(b) hereof. For the avoidance of doubt, no Financing Fees will be due relating to Financings (a) provided by the Company's founders or management team or (b) relating to the portion of a conversion or refinancing of a Financing procured by Centerview into another Financing procured by Centerview (e.g., the conversion of a bridge into an exit financing).

Notwithstanding anything in this subparagraph 2(c) to the contrary, a Financing Fee earned in connection with a DIP Financing shall be due upon the Company's consummation of the debtor-in-possession financing.

The Company acknowledges and agrees that Centerview's restructuring expertise as well as its capital markets/financing knowledge and mergers and acquisitions capabilities, some or all of which may be required during the term of Centerview's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Centerview's services hereunder could not be measured merely by reference to the number of hours to be expended by Centerview's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Centerview and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Centerview and that the actual time and commitment required by Centerview and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given numerous issues which Centerview may be required to address in the performance of its services hereunder, Centerview's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Centerview's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards.

The Company and Centerview acknowledge and agree that more than one fee may become payable to Centerview under subparagraph 2(c) hereof in connection with any single transaction or a series of transactions. It is understood and agreed that if more than one fee becomes so payable to Centerview in connection with a series of independent transactions, each such fee shall be paid to Centerview, subject to applicable credits as provided in this paragraph 2.

3.      In addition to the fees payable by the Company to Centerview hereunder, the Company shall, whether or not any Restructuring, Financing, and/or Sale shall be proposed or consummated, reimburse Centerview on a periodic basis for its travel and other reasonable and documented out-of-pocket expenses (including all fees, disbursements and other charges of counsel to be retained by Centerview, and of other consultants and advisors retained by Centerview with the Company's consent), incurred in connection with, or arising out of Centerview's activities under or contemplated by this engagement; provided, however, that Centerview shall obtain the prior written consent of the Company prior to incurring any out-of-pocket expenses exceeding $35,000. The Company shall also reimburse Centerview, at such times as Centerview shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any

matter referred to in, or contemplated by, this engagement. Such reimbursements shall be made promptly upon submission by Centerview of statements for such expenses. It is understood and agreed that nothing contained herein shall be deemed to limit in any manner the indemnification, expense reimbursement and other obligations of the Company contained in the Indemnification Agreement attached hereto as Annex A.

4.    The Company and Centerview have entered into a separate letter agreement, dated the date hereof and attached hereto as Annex A (the "Indemnification Agreement"), providing for indemnification by the Company of Centerview and certain related persons.    Such Indemnification Agreement is an integral part of this Agreement and the terms thereof are incorporated by reference herein.  As stated therein, the Indemnification Agreement shall survive any termination or completion of Centerview's engagement hereunder.

5.    The Company agrees that neither Centerview nor any of its affiliates, their respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns (collectively, the "Centerview Persons" and each individually, a "Centerview Person") shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any person asserting claims on behalf of or in right of the Company for or in connection with this engagement or any transactions or conduct in connection herewith, except to the extent that any losses, claims, damages or liabilities incurred by the Company are finally judicially determined to have resulted directly from the willful misconduct or gross negligence of such Centerview Person.

6.    This Agreement and Centerview's engagement hereunder may be terminated by either the Company or Centerview at any time upon 14 days' prior written notice thereof to the other parties; provided, however, that (A) termination of Centerview's engagement hereunder shall not affect the Company's continuing obligations under the Indemnification Agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (B) notwithstanding any such termination, Centerview shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof and (C) termination of Centerview's engagement hereunder shall not affect the Company's obligation to reimburse the expenses accrued prior to such termination to the extent provided in paragraph 3 hereof.

7.    Centerview has been retained under this Agreement as an independent contractor with duties owed solely to the Company, and the Company acknowledges that Centerview is not acting as an agent of the Company or in a fiduciary capacity, whether pursuant to contract or otherwise, with respect to the Company or its stockholders, employees, creditors or any other third party.  The advice (oral or written) rendered by Centerview pursuant to this Agreement is intended solely for the benefit and use of the Company and its Board of Directors (in their capacity as directors and not in any individual capacity) in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, nor shall any public references to Centerview be made by the Company, without the prior written consent of Centerview.  Centerview is not assuming any duties or obligations other than those expressly set forth in this Agreement.

8.    Upon the Company providing prior written consent (not to be unreasonably withheld) after announcement by the Company of a Restructuring, Financing, or Sale, Centerview shall have the right to place advertisements in financial and other newspapers and journals and in marketing materials at its own expense describing its services to the Company hereunder (without the use of any confidential or commercially-sensitive information).

9.    In the event that the Company becomes a debtor under the Bankruptcy Code, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this Agreement and Centerview's retention by the debtor under the terms of this Agreement, and subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code or any other standard of review, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall supply Centerview and its counsel with a draft of such application and any proposed order authorizing Centerview's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Centerview and its counsel to review and comment thereon. Centerview shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless and until Centerview's retention under the terms of this Agreement is approved under Section 327(a) and 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Centerview in all respects. Centerview acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this paragraph 9, payment of Centerview's fees and expenses shall be subject to (i) jurisdiction and approval of the Bankruptcy Court under Section 327(a) and 328(a) of the Bankruptcy Code and any order approving Centerview's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interest and final fee applications. Centerview shall have no obligation to keep time records except as it does so in its normal practice and will have no obligation to provide services under this Agreement if it will be required to vary its normal time-keeping practices. In the event that the Company becomes a debtor under the Bankruptcy Code and Centerview's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Centerview hereunder as promptly as practicable in accordance with the terms hereof. In so agreeing to seek Centerview's retention under section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Centerview's experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its other capabilities will inure to the benefit of the Company, that the value to the Company of Centerview's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees payable to Centerview hereunder are reasonable regardless of the number of hours to be expended by Centerview's professionals in performance of the services to be provided hereunder. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Centerview in cash.

The Company agrees that Centerview's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursements and indemnification provisions of this Agreement (including, without limitation, Annex A hereto) shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. The Company also agrees to assist Centerview in preparing, filing and serving all required fee statements, interim fee applications, and final fee application, The Company agrees to support Centerview's fee applications during any Bankruptcy Court hearing on such fee applications, so long as the fees and expenses sought by Centerview therein are consistent with this Agreement.

10.    This Agreement shall be deemed made in New York. This Agreement and all controversies arising from or relating to performance hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such State, without giving effect to such State's rules concerning conflicts of laws that might provide for any other choice of law. Each of the Company and Centerview agree that any action or proceeding based hereon, or arising out of Centerview's engagement hereunder, shall be brought and maintained in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. The Company and Centerview each hereby irrevocably submit to the jurisdiction of the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York for the purpose of any such action or proceeding as set forth above. Each of the Company and Centerview hereby irrevocably waive, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that any such action or proceeding has been brought in an inconvenient forum and agree not to plead or claim the same. THE COMPANY (FOR ITSELF, ANYONE CLAIMING THROUGH IT OR IN ITS NAME, AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) AND CENTERVIEW EACH HEREBY IRREVOCABLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

11.    This Agreement may be executed in counterparts, each of which together shall be considered a single document. This Agreement may not be assigned by either party (except by Centerview to an affiliate) without the prior written consent of the other. This Agreement shall be binding upon Centerview and the Company and their respective successors and permitted assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan). This Agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto, other than the Indemnified Persons referenced in the Indemnification Agreement attached hereto as Annex A and the Centerview Persons referenced in paragraph 5 hereof. This Agreement and the Indemnification Agreement constitute the entire agreement of the parties with

respect to the subject matter hereof, and may not be amended or otherwise modified or its provisions waived except by a writing executed by Centerview and the Company.

12.    Centerview is engaged directly and through its affiliates and related parties in a number of investment banking, financial advisory and merchant banking activities. The Company acknowledges and agrees that in performing its services hereunder, Centerview shall have no duty to disclose, or to use for the benefit of the Company, any proprietary or non public information obtained by Centerview or its affiliates or related parties in the course of providing services to any other entity or person, engaging in any transaction (including as principal) or otherwise conducting its business.

We are pleased to accept this engagement and look forward to working you. Please confirm that the foregoing is in accordance with our mutual understanding by signing and returning to Centerview this letter and the Indemnification Agreement attached hereto as Annex A, which shall thereupon constitute binding agreements between Centerview and the Company.

Very truly yours,

CENTERVIEW PARTNERS LLC

By:

Name: Marc Puntus
Title: Partner

Accepted and Agreed to:

SmileDirectClub, Inc.

By:

Name: Troy Crawford
Title: Chief Financial Officer

Annex A

September 27, 2023

Centerview Partners LLC
31 West 52nd Street
New York, NY 10019

Ladies and Gentlemen:

In connection with the engagement (the "Engagement") of Centerview Partners LLC ("Centerview") pursuant to an amended and restated letter agreement dated the date hereof (the "Engagement Agreement"), the Company hereby agrees as follows:

1.  Except as provided in paragraph 3 hereof, the Company agrees to indemnify and hold harmless the Centerview Persons (as defined below) from and against any and all losses, claims, damages, demands and liabilities, joint or several, or actions or proceedings in respect thereof, brought by or against any person, including, without limitation, by the Company against any Centerview Person and vice versa (collectively, "Losses"), which are related to or arise out of the Engagement Agreement, the Engagement or any matter or transaction contemplated thereby. As used in this letter agreement, the term "Centerview Persons" shall mean Centerview and each of its affiliates, Centerview's and such affiliates' respective members, directors, officers, employees and controlling persons, and each of their respective successors and assigns.

2.  The Company agrees to reimburse Centerview and each other Centerview Person promptly upon request for all reasonably incurred and documented costs and expenses (including fees, disbursements and other charges of legal counsel), as they are incurred in connection with investigating, preparing for, pursuing, defending against or providing evidence in, any pending or threatened action, claim, suit, investigation or other proceeding brought by or against any person, including, without limitation, by the Company against any Centerview Person and vice versa, in any jurisdiction related to or arising out of the Engagement Agreement, the Engagement or any matter or transaction contemplated thereby (whether or not Centerview or any other Centerview Person is a named party or witness, and whether or not any liability to any person results therefrom), including, without limitation, in connection with enforcing the terms hereof.

3.  Notwithstanding the foregoing, the Company shall have no obligation to indemnify and hold harmless any Centerview Person under this letter agreement in respect of any Losses to the extent that such Losses are finally judicially determined to have resulted directly from the bad faith, willful misconduct or gross negligence of such Centerview Person.

4.  The Company agrees that it will not, without Centerview's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, claim, suit, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Centerview or any other Centerview Person is an actual or potential party thereto) unless such settlement,

compromise, consent or termination includes an unconditional release of each Centerview Person from all liability arising out of such action, claim, suit, investigation or proceeding and does not impose any monetary or financial obligation on any Centerview Person or contain any admission of culpability or liability on the part of any Centerview Person. No Centerview Person seeking indemnification, reimbursement or contribution under this letter agreement will, without the Company's prior written consent (which consent shall not be unreasonably withheld or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

5.    If the foregoing indemnification provided for herein is determined to be unavailable to a Centerview Person for any reason or is insufficient to hold it harmless in respect of any Losses referred to herein, then, in lieu of indemnifying such Centerview Person hereunder, the Company shall contribute to the amount paid or payable by such Centerview Person as a result of such Losses (and expenses related thereto) (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and to Centerview, on the other hand, with respect to the Engagement or (ii) if the allocation provided by clause (i) of this paragraph is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of each of the Company, together with its officers, directors, employees, stockholders, affiliates and other advisors, on the one hand, and Centerview, on the other hand, and any other relevant and equitable considerations; provided, however, that in no event shall the aggregate contribution of the Centerview Persons to the amounts so paid or payable exceed the aggregate amount of all fees actually received by Centerview from the Company in connection with the Engagement (excluding any amounts received by Centerview as reimbursement of expenses pursuant to the Engagement Agreement). For purposes of this letter agreement, the relative benefit to the Company and Centerview of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by the Company in the transaction or transactions that are the subject of the Engagement, whether or not such transaction is proposed or completed, bears to (b) the fees paid or to be paid to Centerview under the Engagement Agreement.

6.    This letter agreement shall be deemed made in New York. This letter agreement and all controversies arising from or relating to performance hereunder shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such State, without giving effect to such State's rules concerning conflicts of laws that might provide for any other choice of law. Each of the Company and Centerview agrees that any action or proceeding based on, arising out of or resulting from any matter referred to in this letter agreement, shall be brought and maintained exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. The Company and Centerview each hereby irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York for the purpose of any such action or proceeding as set forth above, and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceeding. Each of the

Company and Centerview hereby irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that any such action or proceeding has been brought in an inconvenient forum, and agree not to plead or claim the same. ANY RIGHTS OF TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THIS LETTER AGREEMENT ARE HEREBY WAIVED.

7.  The indemnity, contribution, reimbursement and other obligations of the Company hereunder shall be in addition to any liability that the Company may have, at common law or otherwise, and shall be binding on its successors and permitted assigns. The obligations of the Company hereunder cannot be assigned without the prior written consent of Centerview.

8.  Centerview acknowledges that the indemnification obligations under this Annex A are solely obligations belonging by the Company to Centerview.

9.    Prior to or at the time a public announcement is made concerning the Company entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will notify Centerview in writing thereof and, if requested by Centerview, shall use commercially reasonable efforts to arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein.

10.   The terms of this letter agreement shall apply to all services provided by Centerview for the benefit of the Company in connection with the matters contemplated by the Engagement, including those provided prior to the date of this letter agreement. The provisions of this letter agreement shall apply to any subsequent amendment to or modification of the Engagement Agreement, and shall survive the termination of the Engagement Agreement or completion of any transaction contemplated by the Engagement Agreement. The provisions of paragraph 11 of the Engagement Agreement are incorporated by reference into this letter agreement.

Very truly yours

SMILEDIRECTCLUB, INC.

By: _____
      Name: Troy Crawford
      Title: Chief Financial Officer

Accepted:

CENTERVIEW PARTNERS LLC

By: _____
      Marc Puntus
      Partner

**Exhibit B**

**Kielty Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SMILEDIRECTCLUB, INC., *et al.*,[1] | ) | Case No. 23-90786 (CML) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF**
**RYAN KIELTY IN SUPPORT**
**OF THE DEBTORS' APPLICATION**
**FOR ENTRY OF AN ORDER AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF CENTERVIEW**
**PARTNERS LLC AS INVESTMENT BANKER FOR THE DEBTORS**
**AND DEBTORS IN POSSESSION EFFECTIVE AS OF SEPTEMBER 29, 2023**

I, Ryan Kielty, hereby declare and state as follows pursuant to 28 U.S.C. § 1746:

1.      I am a partner in the Debt Advisory and Restructuring Practice of Centerview Partners LLC ("Centerview"), an independent investment banking firm with its principal offices at 31 West 52nd Street, 22nd Floor, New York, New York 10019.  Centerview is the proposed investment banker for the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases.

2.      I make this declaration (this "Declaration") in connection with the proposed employment and retention of Centerview as investment banker to the debtors and debtors in possession in the above-captioned cases to perform services as set forth in the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Centerview Partners LLC as*

---

1       A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SmileDirectClub.  The location of Debtor SmileDirectClub, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1530 Antioch Pike, Antioch, Tennessee 37013.

*Investment Banker for the Debtors and Debtors in Possession Effective as of the Petition Date* (the "<u>Application</u>").[2]  Unless otherwise indicated herein, the statements in this Declaration are based on my personal knowledge, my discussions with other employees of Centerview, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or by employees of Centerview under my supervision and direction. I am over the age of eighteen.  If called as a witness, I could and would testify as set forth herein.

3.      Established in 2006, Centerview is an independent investment banking firm providing financial advisory services, including mergers and acquisitions, financing, and restructuring advice, across a broad range of industries.  Centerview serves a diverse set of clients around the world from its offices in New York, San Francisco, Menlo Park, London, and Paris. Centerview's Debt Advisory and Restructuring Group, which was founded in 2011, has expertise in designing and managing complex restructuring processes among a wide range of stakeholders, and a demonstrated track record of designing, negotiating and implementing amendments, exchange offers, financings, distressed merger and acquisition transactions and out-of-court and in-court restructurings.  Centerview and its principals have advised debtors, lenders, committees, equity holders and acquirors in many complex financial reorganizations.   Centerview's professionals have collectively advised on transactions representing over $300 billion in restructured debt.

4.      Centerview's professionals are providing or have provided financial advisory, investment banking, and other services in connection with the in-court restructuring of numerous companies, including the following recent cases in this and other districts:  *In re Ultra Petroleum Corp.*, No. 20-32631 (MI) (Bankr. S.D. Tex. June 29, 2020); *In re Westmoreland Coal Co.*,

---

2      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

No. 18-35672 (DRJ) (Bankr. S.D. Tex. Nov. 14, 2018); *In re SVB Fin. Grp.*, No. 23-10367 (MG) (Bankr. S.D.N.Y. Apr. 28, 2023); *In re Celsius Network LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Sept. 16, 2022); *In re Enjoy Tech., Inc.*, No. 22-10580 (JKS) (Bankr. D. Del. Aug. 9, 2022); *In re Sungard Availability Servs. Cap., Inc.*, No. 19-22915 (RDD) (Bankr. S.D.N.Y. July 3, 2019); *In re CTI Foods, LLC*, No. 19-10497 (CSS) (Bankr. D. Del. Apr. 8, 2019); *In re Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del. Jan. 10, 2010).[3]  Centerview's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including, among others:  Cloud Peak Energy, J. C. Penney Company, Neovia Logistics, Trinseo, Designer Brands, Alcatel, and The Dhanani Group.

5.      Centerview has agreed to provide investment banking, restructuring and financial advisory services to the Debtors in the above-captioned chapter 11 cases pursuant to the terms and conditions of that certain engagement letter, dated as of September 27, 2023 (the "Engagement Letter").  The terms of Centerview's engagement are set forth in the Engagement Letter and Indemnification Provisions, attached to the Application as Exhibit A.

6.      Prior to the Petition Date and pursuant to the Original Agreement and the Engagement Letter, the Debtors paid Centerview (a) $650,000.00 in Monthly Advisory Fees, which payments represented (i) payment of the Monthly Advisory Fees for June 2023 through September 2023 and (ii) a $150,000.00 advance for the Monthly Advisory Fee for October 2023 (such advance, the "Retainer"), and (b) $3,624.36 as reimbursement for Centerview's reasonable and necessary expenses incurred through the Petition Date.  Centerview shall apply any remaining amounts of the Retainer as a credit towards postpetition fees and expenses after Court approval of

---

[3]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration.  Copies of these orders are available upon request of the Debtors' proposed counsel.

such postpetition fees and expenses.  Centerview has received no other compensation from the Debtors pursuant to the Original Agreement or the Engagement Letter.  As of the Petition Date, Centerview did not hold a prepetition claim against the Debtors for fees or expenses related to services rendered in connection with the Original Agreement or the Engagement Letter.

7.      Centerview intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter.

8.      In connection with its proposed retention by the Debtors in these chapter 11 cases, Centerview undertook to determine whether it had any conflicts or other material relationships that might cause it not to be disinterested or to hold or represent an interest adverse to any debtors in these chapter 11 cases.  In connection with this inquiry, Centerview obtained from the Debtors and their professionals the names of individuals and entities that may be parties-in-interest in these chapter 11 cases (the "Potential Parties-in-Interest").  A categorized summary of the Potential Parties-in-Interest is provided on **Schedule 1** attached hereto.

9.      To the best of my knowledge, information and belief, Centerview has not represented any Potential Parties-in-Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these chapter 11 cases, except as set forth herein.

10.     As part of this inquiry, Centerview entered the names of the Potential Parties-in-Interest into its computer database of existing and prior client and similar relationships.

The list generated from Centerview's client database is over-inclusive. Through this process, Centerview determined that it currently has and/or formerly had a relationship with certain of the Potential Parties-in-Interest (and/or their affiliates or entities that Centerview believes to be affiliates, as the case may be) on matters wholly unrelated to the Debtors or these chapter 11 cases. To the best of my knowledge, information, and belief, and based on such internal review process, **Schedule 2** lists Potential Parties-in-Interest (and/or their apparent affiliates or entities that Centerview believes to be affiliates, as the case may be) with which Centerview currently has or formerly had a client or similar relationship on matters wholly unrelated to the Debtors or these chapter 11 cases, including but not limited to engagements to provide financial advisory services (including situations where the Potential Party-in-Interest is or was only a member of a group of lenders, creditors or equity owners that Centerview represented) and entities with whom Centerview has engaged in or is currently engaged in an ordinary course business development dialogue. I note that Centerview's only relationship with the Debtor and non-Debtor affiliates is through its current engagement with the Debtors.

11. These foregoing relationships are in no way connected with matters relating to the Debtors, their estates, assets, or businesses, and I do not believe these relationships impair Centerview's disinterestedness with respect to Centerview's representation of the Debtors and their estates in these chapter 11 cases. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these relationships are adverse to the Debtors' interests.

12. As part of its diverse practice, Centerview appears as a financial advisor or an investment banker in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may

represent Potential Parties-in-Interest in these chapter 11 cases.  Further, Centerview (including its professionals through their prior employment) has in the past, and may in the future, be represented by attorneys and law firms, some of whom may be involved in these proceedings.  In addition, Centerview (including its professionals through their prior employment) has in the past and will likely in the future be working with, against or for other professionals involved in these cases in matters unrelated to these proceedings.  In addition, Centerview has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works with or against or has mutual clients with other professionals involved in these chapter 11 cases.  In particular, Centerview may also represent, or may have represented in the past, committees or groups of lenders, creditors, or equity owners in matters unrelated to the Debtors or these chapter 11 cases, some of which are included on the Potential Parties-In-Interest list.  Furthermore, as set forth on **Schedule 3**, Centerview has vendor relationships with certain of the entities listed as Potential-Parties-Interest, including law firms, unrelated to the Debtors or these chapter 11 cases.  Based on our current knowledge of the entities listed as Potential Parties-in-Interest in these chapter 11 cases and the professionals involved, none of these business relations constitute interests materially adverse to the Debtors in the matters upon which Centerview is to be employed.

13.    Other than as referenced herein or set forth on **Schedule 2**, I am unaware of any existing or prior client or similar relationships that Centerview has had with the Potential Parties-in-Interest herein.  If Centerview's proposed retention by the Debtors is approved by this Court, Centerview will not accept any engagement or perform any service for any entity or person other than the Debtors in these chapter 11 cases.  Centerview is a global investment banking and advisory firm.  Given Centerview's size and the breadth of its client base, it is possible that

Centerview may now or in the future be engaged by one or more of the Potential Parties-in-Interest in matters unrelated to the Debtors or these chapter 11 cases without my knowledge. In addition, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not listed as Potential Parties-in-Interest and with whom Centerview may now or in the future have engagements or maintain material commercial or other professional relationships. To the extent that Centerview discovers any, or enters into any new, material commercial or other professional relationship with Potential Parties-in-Interest, it will supplement this disclosure to the Court.

14. Further, Centerview has legal and separate affiliates and related parties (the "Corporate Group Entities") that engage in a variety of investment activities. The Corporate Group Entities operate Centerview Capital Consumer, a consumer-focused private equity and investment business, and Centerview Capital Technology, a technology focused private and growth equity business. The Corporate Group Entities do not reside in the same corporate structure as Centerview. The Centerview employees providing services in connection with these chapter 11 cases have no control over investment or business decisions made for the Corporate Group Entities, and because of physical and electronic information barriers and other compliance policies and procedures, have no access to any confidential information of the Corporate Group Entities. Likewise, the investment professionals responsible for the Corporate Group Entities' day-to-day portfolio management have no access to any confidential information relating to Centerview's work for the Debtors. Further, none of the Corporate Group Entities holds an ownership interest in, or debt of, any of the Debtors or the other Potential Parties-in-Interest.[4]

---

[4] Vehicles sponsored by Centerview Capital Consumer and Centerview Capital Technology currently have only one (1) and four (4) investments, respectively.

15.     Based upon my understanding, Centerview's internal compliance group, which sits above Centerview's investment banking deal teams and the investment professionals within Corporate Group Entities, has real-time access to the identities of the companies in which the Corporate Group Entities invest.  As part of Centerview's search for relationships between any of the Corporate Group Entities and the companies in which they are invested, on the one hand, and the Potential Parties-in-Interest, on the other hand, Centerview's internal compliance group compared the Corporate Group Entities and the companies in which they are invested to the list of Potential Parties-in-Interest.  Centerview's internal compliance group, consistent with its standard practice, did not inform any of the Corporate Group Entities that it was conducting this comparison.  Furthermore, were any of the Corporate Group Entities to make a new investment, Centerview's internal compliance group would be made aware before the investment is made and would be in a position to review that investment against the Potential Parties-in-Interest and update Centerview's prior disclosures or take other action as necessary.

16.     Based on the foregoing, I believe that the Corporate Group Entities' investment activities do not present a conflict of interest with respect to Centerview's retention by the Debtors in these chapter 11 cases.  If any of the Corporate Group Entities subsequently invests in any of the Potential Parties-in-Interest, or if Centerview becomes aware that any entity in which any of the Corporate Group Entities is invested subsequently becomes a Potential Party-in-Interest, Centerview will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).  Moreover, I note that certain of the Potential Parties-in-Interest may now or in the future invest in funds that are managed by the Corporate Group Entities or co-invest with the Corporate Group Entities, but I do not believe that these potential relationships create a conflict of interest for Centerview regarding the Debtors or these chapter 11 cases.

17.     To the best of my knowledge and belief after reasonable inquiry, neither I, Centerview, nor any Centerview employees participating in Centerview's engagement with the Debtors: (a) is related to or has any connection with the U.S. Trustee, or anyone employed by the U.S. Trustee, or (b) is related to or has any connection with any United States Bankruptcy Judge for the Southern District of Texas, including the judge assigned to these cases.

18.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Centerview has no agreement with any other entity to share with such entity any compensation received by Centerview in connection with these chapter 11 cases.  No promises have been received by Centerview as to compensation for Centerview in connection with these chapter 11 cases other than in accordance with the Engagement Letter.

19.     Certain employees of Centerview, as well as certain companies in which the Corporate Group Entities hold investments, may have mortgages, consumer loans, investment accounts, brokerage accounts, or other banking, brokerage or other customer relationships with institutions that are creditors, equity holders or other Potential Parties-in-Interest in these chapter 11 cases or with funds sponsored by or affiliated with such parties.  I do not believe that these relationships create a conflict of interest regarding the Debtors or their chapter 11 cases.

20.     Certain employees of Centerview were formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, the creditors, equity holders or other Potential Parties-in-Interest in these chapter 11 cases in connection with matters unrelated to the Debtors and the chapter 11 cases.  I do not believe that these matters create a conflict of interest regarding the Debtors or the chapter 11 cases.

21.     In addition, certain employees of Centerview and certain of such persons' relatives may directly or indirectly hold, in the ordinary course, debt or equity securities of certain of the Potential Parties-in-Interest or investment funds sponsored by them.  However, based upon the information that has been provided to me, I believe that any such holdings are insignificant and, to my knowledge, none of these investors controls or has any influence on such Potential Party-in-Interest.  Further, I do not believe these investments, considered separately or collectively, are material or create a conflict of interest regarding the Debtors or these chapter 11 cases.

22.     I am informed that Holly Zimmerman, an employee of Centerview who is not working on these chapter 11 cases, is married to the founder and Chief Investment Officer of Prentice Capital Management, LP ("Prentice Capital"), a hedge fund which is a minority equity shareholder of the Debtors and a Potential Party-in-Interest.  Ms. Zimmerman does not personally have an equity interest in the Debtors and has no involvement in Prentice Capital's investment or other decisions, including decisions that may be made in connection with these chapter 11 cases. Further, Ms. Zimmerman has not performed and will not perform any work with respect to these chapter 11 cases or have access to any confidential information relating to Centerview's work for the Debtors.  Accordingly, I believe that Prentice Capital's equity investment does not create a conflict of interest for Centerview in relation to the Debtors or these chapter 11 cases.

23.     Finally, I note that John Roos, a senior advisor to Centerview, is a member of the board of directors of Salesforce, Inc., a top 60 vendor and unsecured creditor of the Debtors and a Potential Party-in-Interest.  As a senior advisor, Mr. Roos is a part-time independent contractor. Mr. Roos is not an employee of Centerview.  He does not share in any of the profits of Centerview (including any fees that may be paid by the Debtors to Centerview) and has no role in the governance of Centerview in any respect.  Further, Mr. Roos does not have access to confidential

information relating to Centerview's work for the Debtors, and he is not physically located in any Centerview office. Mr. Roos has not performed and will not perform any work with respect to these chapter 11 cases. Accordingly, I believe that the foregoing board membership does not present a conflict of interest regarding the Debtors or these chapter 11 cases.

24. In the light of the number of the Debtors' creditors, Potential Parties-in-Interest, and potential additional parties in interest, neither I nor Centerview am able conclusively to identify all potential relationships at this time, and we reserve the right to supplement this disclosure as additional material relationships come to our attention. In particular, among other things, Centerview may have relationships with persons who are beneficial owners of Potential Parties-in-Interest and persons whose beneficial owners include Potential Parties-in-Interest or persons who otherwise have relationships with Potential Parties-in-Interest. Moreover, Centerview employees may have relationships with Potential Parties-in-Interest, persons that may become parties in interest in this case, or persons that have business relationships with the Debtors or are competitors of the Debtors.

25. Based upon the foregoing, to the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, Centerview and the employees of Centerview that will work on this engagement do not hold or represent any interest adverse to the Debtors or their estates, and Centerview is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Centerview and the employees of Centerview that will work on this engagement:

      a.   are not creditors, equity security holders, or insiders of the Debtors;

      b.   were not, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

      c.   do not have an interest materially adverse to the Debtors, their respective estates or the estates of any other debtors in these chapter 11 cases, or any class of creditors

or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

26.     To the extent that any new material facts or relationships bearing on the matters described herein during the period of Centerview's retention are discovered or arise, Centerview will use reasonable efforts to file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  October 27, 2023                          Respectfully submitted,
New York, New York

                                                  */s/ Ryan Kielty*
                                                  _____
                                                  Ryan Kielty
                                                  Partner
                                                  Centerview Partners, LLC

## Schedule 1[1]

The following lists contain the names of reviewed entities as described more fully in the *Declaration of Ryan Kielty in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Centerview Partners LLC as Investment Banker for the Debtors and Debtors in Possession Effective as of the Petition Date* (the "Kielty Declaration").[2]  Where the names of the entities reviewed are incomplete or ambiguous, the scope of the search was intentionally broad and inclusive, and Centerview Partners LLC reviewed each entity in its records, as more fully described in the Kielty Declaration, matching the incomplete or ambiguous name.

---

[1]  Pursuant to the *Order (I) Waiving the Requirement to File a List of Equity Security Holdings, (II) Authorizing the Debtors to Redact Certain Personally Identifiable Information, (III) Approving the Form and Manner of Notifying Creditors of the Commencement of the Chapter 11 Cases and Other Information, and (IV) Granting Related Relief* [Docket No. 70] and the *Debtors' Omnibus Motion for Entry of an Order (I) Authorizing the Debtors to File Under Seal the Names of Certain Confidential Parties in Interest Related to the Debtors' Professional Declarations and (II) Granting Related Relief* [Docket No. 185], the names of individuals and the confidential marketing process parties listed in the schedules to the Kielty Declaration are being redacted.  An unredacted version of the Kielty Declaration will be contemporaneously provided to the Court, U.S. Trustee, and counsel to the Committee.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Kielty Declaration.

# SCHEDULE 1

### List of Schedules

| Schedule | Category |
|---|---|
| 1(a) | Debtors and Non-Debtor Affiliates |
| 1(b) | Directors and Officers |
| 1(c) | Equity Shareholders |
| 1(d) | Banks |
| 1(e) | Debtor and Creditor Restructuring Professionals |
| 1(f) | Insurance |
| 1(g) | Landlords |
| 1(h) | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| 1(i) | Lienholders |
| 1(j) | Litigation Parties |
| 1(k) | Marketing Process Parties |
| 1(l) | Taxing Authorities |
| 1(m) | Top 60 Vendors and Unsecured Creditors |
| 1(n) | U.S. Trustee Office Personnel, Judges, and Court Staff |
| 1(o) | Utility Providers |

# SCHEDULE 1(a)

## Debtors and Non-Debtor Affiliates

Access Dental Lab LLC
CAMF II LLC
Danny Blaine Leeds, DDS Dentistry PC
Dowling, David, DDS
Dr. Brian Nelson, a Professional Corp.
Dr. Shivesh Ruparelia Dental Corp. (British
    Columbia)
Dr. Shivesh Ruparelia Dental Corp.
    (Manitoba)
Dr. Shivesh Ruparelia Dentistry PC
Dr. Shivesh Ruparelia PC
Dr. Walter Heidary Dentistry (NS)
    Professional Inc.
Dr. Walter Heidary Dentistry PC
Dre. Layal Ksaybi Dentiste Inc.
Eric Buck, DDS of Maryland PC
Garrett Oka, DDS of Nebraska PC
Gary Nathan Moore, DDS PC
Jeffery A. Sulitzer, DMD PC
Jeffrey Sulitzer, DMD PC
Kenneth Steven Wolf, DDS PC
Mia Burney Dentistry of Delaware PA
Ortho Lab Services LLC
Robert Kreashko, DDS PC
S.E.L.A.S. de Chirugien Dentiste Mi Risus
SDC Canada Inc.
SDC Financial LLC
SDC Holding LLC
SDC Plane LLC
SDC U.S. SmilePay SPV
Shivesh Ruparelia PC
Smile Dentistry of Hawaii PC
Smile Dentistry of Puerto Rico PC
Smile of Arizona PC
Smile of Colorado PC
Smile of Florida PA
Smile of Georgia PC
Smile of Minnesota PC
Smile of New Jersey PA
Smile of Ohio Inc.
Smile of Oklahoma PC

Smile of Pennsylvania PC
Smile of Rhode Island PC
Smile of South Dakota PC
Smile of Tennessee PC
Smile of Vermont PC
Smile of Washington, D.C. PC
Smile of Wyoming PC
SmileDirectClub AUS Pty. Ltd.
SmileDirectClub DEU GmbH
SmileDirectClub Foundation
SmileDirectClub FR SARL
SmileDirectClub HK Ltd.
SmileDirectClub HK Ltd., Taiwan Branch
SmileDirectClub Inc.
SmileDirectClub Inc. PAC
SmileDirectClub IRL Ltd.
SmileDirectClub LLC
SmileDirectClub Mexico S. de RL de CV
SmileDirectClub Mexico Servicios S. de RL
    de CV
SmileDirectClub NLD BV
SmileDirectClub NZ
SmileDirectClub SA
SmileDirectClub Singapore Pte. Ltd.
SmileDirectClub Spain SL
SmileDirectClub UK Ltd.
SmileFarm LLC
Smiles Made Here of Arkansas PA
Smiles Made Here of Australia Pty. Ltd.
Smiles Made Here of Indiana PC
Smiles Made Here of Mexico SC
Smiles Made Here of New Hampshire PC
Smiles Made Here of Texas PC
Smiles Made Here of UK Ltd.
Smiles of Australia Pty. Ltd.
Smiles of Costa Rica SRL
Smiles of Ireland
Smiles of Netherlands BV
Smiles of New Zealand
Smiles of Spain SLP
SpaDirectClub LLC

Woollahra Dental Pty. Ltd.

# SCHEDULE 1(b)

### Directors and Officers

Cicurel, Steven
Crawford, Troy
Dmitrief, Alex
Fenkell, Alexander
Katzman, David
Katzman, Jordan
Katzman, Randi
Katzman, Steven
Long, Genevieve
Rammelt, Susan Greenspon
Skinner, Justin
Stokes, Alvin
Sulitzer, Jeffrey
Wallman, Richard F.
Ward, Ted
Wertz, Kevin
Williams, Linda

# SCHEDULE 1(c)

## Equity Shareholders

Alexander J. Fenkell 2018 Irrevocable Trust
BlackRock Institutional Trust Co. NA
David B. Katzman 2009 Family Trust DTD
DBK Investments LLC DTD 9/7/2018
Jordan M. Katzman 2018 Irrevocable Trust DTD 6/14/2018 - JM Katzman Investments
Prentice Capital Management LP
Vanguard Group Inc., The

# SCHEDULE 1(d)

### **Banks**

ASB Bank Ltd.
BAC Credomatic Inc.
Bank of America NA
Deutsche Bank AG
JPMorgan Chase & Co.

# SCHEDULE 1(e)

### Debtor and Creditor Restructuring Professionals

Ducera Partners LLC
FisherBroyles LLP
FTI Consulting Inc.
Jackson Walker LLP
Kirkland & Ellis LLP
Kirkland & Ellis Inernational LLP
Kroll Restructuring Administration LLC
Latham & Watkins LLP
Paul Weiss Rifkind Wharton & Garrison LLP
PricewaterhouseCoopers LLP

# SCHEDULE 1(f)

### **Insurance**

AIG
Allied World Assurance Co. Holdings Ltd.
Ambridge Partners LLC
Arch Insurance Co.
Beazley plc
Berkley
Chubb Ltd.
Cincinnati Insurance Co.
CNA
Everest Indemnity Insurance Co.
Hartford
Hiscox Ltd.
Multinational Insurance Co.
Nationwide Mutual Insurance Co.
NFP Property & Casualty Services Inc.
Philadelphia Indemnity Insurance Co.
Talbots
Tokio Marine HCC
XL Specialty Insurance Co.

# SCHEDULE 1(g)

## Landlords

11 S. 12th Level Office LLC
16031 Partners Ltd.
17th & Larimer LLC
1900 M LLC
2001 Associates LLC
201 East 61 LLC
222 Exhibition St Pty Ltd.
242 Gramercy Fifth LLC
320 West 135 Street LLC
606 Liberty Level Office LLC
640 North Wells LLC
A.S. Watson Retail (HK) Ltd.
Alcomed SL
[Individual – Redacted]
AmREIT Uptown Dallas LP
AMS Salon I LLC
ASE Management Woodfield LLC
Aventurin Betriebs GMBH
Ayusa Marketing Co. Inc.
Badger LLC
Ballindamm 40 Tenant GmbH
Barratte Investment Management Co. Ltd.
Barrister Executive Suites Inc.
Bellevana LLC
Bello Salon Suites
Bevendale Pty Ltd.
Bevill Inc.
Blue Boat Suite Management
BRE Mariner Ross Plaza LLC
Brickyard
Bullring Ltd.
Camisclor S.L
CBRE (C) Pty Ltd.
CBRE Ltd.
Chas Hawkins Co. Inc.
Commerz Real Investment GmbH
Condominio WTC CD De Mexico AC
Connect Hub Coworking
Cosmident SL
CoSuite LLC
CPUS KOP Town Center LP
Cummin Development LLC

CVS Pharmacy Inc.
Daito Trust Construction Co. Ltd.
Dashmote BV
Davy Target Developments Ltd.
DCM Group Ltd.
Delancey Walnut 2016 LLC
Denali Management Inc.
Denta Beaute Zahnmedizin
Dental 365 Utrecht BV
Dentalcorp Health Services ULC
Depot Lab
Drake Pacer Bakertown Acquisition LLC
DTDL Ltd.
Dublin City Council
Engel Properties Invest SL
Falco 70-72 Investments Ltd.
Fallon Investment Corp.
[Individual – Redacted]
Fountain Investments LLC
FR5 LLC
Friedman Real Estate Management LLC
Gather Workspaces
[Individual – Redacted]
[Individual – Redacted]
Hashkaot Investment Relations LLC
Hewlett-Packard Financial Services Co.
Hone Coworks
Howley Salon Group LLC
Huddle Office Workplace
IA Atlanta Buckhead LLC
IBP Suites
Indivision 3 Arigoni
Inmobiliaria Inter SA
Inmobiliaria Segura y Rentable SA
InmoKing Real Estate SA
Integer Inc.
Inverfago SLU
iQ Office 1055 West Georgia Inc.
IW Group Services (UK) Ltd.
Jefferson SoLA LLC
Jet Office LLC
JustCo (Singapore) Pte. Ltd.

Kent County Council Superannuation Fund
Kermit C. Stengel Co.
Knight Frank Australia Pty. Ltd.
KNOWN Coworking LLC
Lagerbox Frankfurt GmbH
Lancaster Coworking LLC
Land Securities Trinity Ltd.
Launch Pad Hahne LLC
Legacy Salons
Lichfield Holdings Ltd.
LS Buchanan Ltd.
M&M Office Group LLC
M&N Salons LLC
Macbro P LLC
[Individual – Redacted]
Marc Duvivier Consultancy Ltd.
[Individual – Redacted]
Medicare-Beauty GmbH
Mid South Professional Holdings LLC
MITSA Pty Ltd.
MIX Salon Studios South Ridge
MKMR Properties LLC
[Individual – Redacted]
Montreal Cowork Inc.
Morgan Legacy Ventures Inc.
Mount Eden Land Ltd.
MY SALON Suite
MY SALON Suite of Glen Ellyn
[Individual – Redacted]
NextGen Offices Inc.
NW Met LP
NW UK (Pure Offices) Ltd.
Office Evolution
Office Evolution Central Texas
Office Villas LLC
[Individual – Redacted]
Olsworth Holdings Ltd.
OrangeTwist LLC
Pacific Workplaces
[Individual – Redacted]
Paseo Caribe Commercial LLC
Phenix Salon Suites
Phenix Salon Suites Orange
Phenix Salons of Paramus LLC
Plaza West Covina LP
[Individual – Redacted]

[Individual – Redacted]
PopUp Immo Ltd.
Premier Workspaces
Prologis Targeted US Logistics Fund LP
Puerto Venecia
QIC Epping Pty Ltd.
Regus Group Ltd.
Renta Antigua Lopez Brea SL
Republic Workspace
Rigel 2005 Gestión Inmobiliaria SA
[Individual – Redacted]
RW Apache LLC
Salon Concepts Master LLC
Salon Lofts Group LLC
Salon Plaza Enterprises LLC
Salons by JC
Salons by JC - High Point/Greensboro
Salons by JC - Seattle
Salons by JC Tulsa
[Individual – Redacted]
Satpurush Inc.
SBJC Brandon Inc.
Scentre Shopping Centre Management Pty Ltd.
Scentre Sydney No 1 Pty Ltd.
Schaefer & Wunsch Immobilienmanagement GmbH
SelfStorage Dein Lager LV GmbH
Serendipity Labs Orlando
Servcorp Hong Kong Ltd.
Servcorp Parramatta Pty Ltd.
Shared Office Partners LLC
Shoppers Drug Mart Inc.
Shorenstein Realty Investors Twelve LP
[Individual – Redacted]
Smile Brands Inc.
Sociedad Azucarera Larios Patrimonio SL
Sola Birmingham LLC
Sola Freedom LLC
Sola Houston 1 LLC
Sola Orem LLC
Sola Salon Studios
Sola Salon Studios Highland Park
Sola Salon Studios LLC
Sola Salon Studios Pittsburgh PA
Sola Salons Los Angeles LLC

Sola Salons Royal Oak LLC
Sola Sugar House LLC
Spaceman Ventures LLC
Specialita Italo - Iberica SL
Startway Partners
Stephens Green Administration Ltd.
Storefront, The
Stratford City Shopping Centre
Studio Group Partners LLC
Suite Life WI II LLC, The
Sweet Season Pty Ltd.
Terrace Tower USA-Portland LLC
Thor 17 West 125th Street LLC
Thor Atlantic Gardens LLC
Tram Lease Ltd. Trustee
TSG Realty
Twelve Orchards Corporate
    Center Associates LLC
Union Cowork LLC
URBI Investment 2 Sub G BV
[Individual – Redacted]
Venture X Capital Inc.
Vicinity Real Estate License Pty Ltd.
Vickery Village Office Suites LLC
Walgreen Co.
Wal-Mart Canada Corp.
Waterfront A LLC
Westchester Business Center LLC
Weston Office Solutions Ltd.
WeWork Inc.
WeWork Paris I Tenant SAS
WeWork PHL
Work Nicer Coworking
Workbar LLC
Worklab by Custer
Workman LLP
WSL-Philips Plaza LLC
Wulfe Management Services Inc.
WW Worldwide CV
XPO Transport Solutions UK Ltd.
[Individual – Redacted]
[Individual – Redacted]

# SCHEDULE 1(h)

## Lenders, Agents, Indenture Trustees, and/or Other Debtholders

Aequim Alternative Investments LLC
Alexander Fenkell Revocable Trust Dated October 21, 2016
Aristeia Capital
AS Birch Grove
Baillie Gifford & Co.
Camelot Venture Group LLC
Context Capital
D.E. Shaw & Co. LP
David Katzman Revocable Living Trust U/A/D June 9, 1989
Davidson Kempner Capital Management LP
DBK Investments LLC
Fort Baker Capital Management LP
Healthcare Finance Direct LLC
Highbridge Capital
HPS Investment Partners LLC
Hudson Square Capital
Jordan M. Katzman Revocable Trust Dated June 14, 2018
JM Katzman Investments LLC
Lazard Ltd.
Linden Advisors LP
LMR Partners
Marshall Wace LLP
Millennium Management LLC
Murchinson Ltd.
Opti Capital Management LP
P. Schoenfeld Asset Management LP
Redwood Capital
Weiss Asset Management LLC
Whitebox Advisors LLC
Wolverine Asset Management LLC

# SCHEDULE 1(i)

## **Lienholders**

Bank of the West
Caraustar Recycling
CDW Payment Resources
Cluster Holdco LLC
Material Handling Inc.
Robert Reiser & Co. Inc.
TCW Asset Management Co. LLC
TCW Asset Management LLC

# SCHEDULE 1(j)

## **Litigation Parties**

Align Technology Inc.
[Individual – Redacted]
[Individual – Redacted]
Candid Care Co.
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
Illinois, State of, Department of Professional Regulation
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]
[Individual – Redacted]

# SCHEDULE 1(k)

## **Marketing Process Parties**

[Filed Under Seal]

# SCHEDULE 1(l)

## Taxing Authorities

Agilio Dental iLearn CODEplan Ltd.
Alameda, City of (CA)
Alaska, State of, Department of Revenue &
    Tax Division
Arlington, City of (TX)
Arsene Taxand
Artesia, City of (CA)
Atlanta, City of (GA)
Better Business Bureau of Middle
    Tennessee Inc., The
Bexar, County of (TX)
BghU Belastingen
Boca Raton, City of (FL)
Brookfield, City of (WI)
Cannock Chase Public
Chandler, City of (AZ)
Cherry Hill, City of (NJ)
Chicago, City of (IL)
Cleveland, City of (OH)
Colorado, State of, Department of Law
Columbia, City of (TN), Industrial
    Develoment Board
Daly, City of (CA)
Davidson, County of (TN)
Downey, City of (CA)
Duval, County of (FL)
Eastvale, City of (CA)
Flourtown, City of (PA)
Forsyth, County of (NC)
Fort Myers, City of (FL)
Glendale, City of (CA)
Hamburg Chamber of Commerce Inc.
High Point, City of (NC)
Highland Park, City of (IL)
Hillsborough, County of (FL), Board of
    County Commissioners
Houston, City of (TX), Sign Administration
Indiana, State of, Department of Financial
    Institutions
Instituto Mexicano del Seguro Social
Instituto Nacional de Seguros
Jeffersontown, City of (KY)

Justizkasse Hamburg
Kasse.Hamburg
King of Prussia, City of (PA)
Lee, County of (NC)
Leeds City Council
Long Beach, City of (CA)
Los Angeles, City of (CA)
Los Angeles, City of (CA), Department of
    Treasurer & Tax Collector
Macomb, County of (MI), Treasurer
Manchester City Council
Maryland, State of, Comptroller
Medford, City of (OR)
Miami, City of (FL)
Missouri, State of, Division of Finance
Multnomah, County of (OR)
Newham, London Borough of
Newport Beach, City of (CA)
Norfolk, City of (VA)
Norfolk, City of (VA), Treasurer
North Carolina, State of, State Board of
    Dental Examiners
Oakland, County of (MI), Treasurer
Ohio, State of, Bureau of Workers'
    Compensation
Orland Park, City of (IL)
Orlando, City of (FL)
Palm Beach Gardens, City of (FL)
Palm Beach, County of (FL), Tax Collector
Paramus, City of (NJ)
Portland, City of (OR)
PROCOMER
Quebec, Province of (Canada), Department
    of Revenue
Quebec, Province of (Canada), Minister of
    Revenue
Sacramento, County of (CA)
Salt Lake City, City of (UT)
San Diego, City of (CA)
San Juan, City of (Phillipines), Municipal
    Treasurer
Santa Ana, City of (CA)

Schaumburg, City of (IL)
South Carolina, State of, Department of
    Consumer Affairs
St. Louis, City of (MO)
Steuerkasse Hamburg
Summit, City of (NJ)
Tennessee, State of, Department of
    Economic Development
Tennessee, State of, Secretary of State
    Business Services Division
Tesorería General del Ayuntamiento de
    Madrid
UDG GmbH
United States, Government of the,
    Department of Labor & Industries
United States, Government of the,
    Department of Labor & Workforce
    Development
United States, Government of the,
    Department of the Treasury
Ventura, County of (CA), Treasurer - Tax
    Collector
Washington, State of, Department of
    Ecology
Wisconsin, State of, Department of
    Financial Institutions

# SCHEDULE 1(m)

## Top 60 Vendors and Unsecured Creditors

Aetna Life Insurance Co.
Align
Allied Universal Security Services
Amazon Web Services Inc.
American Express
Amobee Inc.
Ankura Consulting Group LLC
Apical Service LLC
Barrett Distribution Centers LLC
Benesch Attorneys at Law
Bixby International Corp.
CDW Direct
Commission Junction
Compunnel Software Group Inc.
Corporate Eagle Management Services Inc.
Coupa Software Inc.
Dash BPO LLC
Ernst & Young LLP
FedEx
Five9
Foley & Lardner LLP
Gen.G Esports
Globant LLC
Google Inc.
Heraeus Kulzer LLC
Horizon Media Inc.
HP Inc.
King & Spalding LLP
Legility LLC
LTIMindtree Ltd.
Merkle Inc.
Multi Packaging Solutions Inc.
NFP Property & Casualty Services Inc.
PJT Partners LP
PowerInbox
Premier Service Co.
Qentelli LLC
Salesforce.com
ServiceNow Inc.
Shenzhen Risun Technology Co. Ltd.
Shopify
Skadden Arps Slate Meagher & Flom LLP

Smartly.io Solutions Inc.
Smile Stream
Snowflake
Sullivan & Cromwell LLP
Sun Life Assurance Co. of Canada
Tango Card Inc.
TANGOE US Inc.
TikTok Inc.
Troutman Pepper Hamilton Sanders LLP
Twilio Inc.
UPS Supply Chain Solutions Inc.
Westrock CP LLC
Wilmington Trust NA
Zest Dental Solutions
Zeta Global Corp.

# SCHEDULE 1(n)

## U.S. Trustee Personnel, Judges, and Court Staff

Barcomb, Alicia
Caluza, Alethea
Castro, Ana
Chavez, Jeannie
Chilton, Samantha
Conrad, Tracey
Do, LinThu
Duran, Hector
Epstein, Kevin M.
Garza, Vianey
Gerhard, Ivette
Henault, Brian
Isgur, Marvin
Jimenez, Andrew
Johnson-Davis, Luci
Laws, Tyler
Lopez, Christopher M.
Martinez, Zilde
Motton, Linda
Nguyen, Ha
Norman, Jeffrey P.
Otto, Glenn
Rios, Mario
Rivera, Yasmine
Rodriguez, Eduardo V.
Roy, Casey
Ruff, Jayson B.
Rust, Kendra
Saldana, Rosario
Sall, Millie Aponte
Schmidt, Patricia
Simmons, Christy
Smith, Gwen
Thomas-Anderson, Sierra
Travis, Christopher R.
Waxton, Clarissa
Whitworth, Jana

# SCHEDULE 1(o)

## Utility Providers

ABB Inc.
ACC Business
Action Carting Environmental Services Inc.
Adesias
AGL Energy Ltd.
Alestra Mexico
Alpha Dot Net Inc.
Ameren Missouri
AmREIT Uptown Plaza Dallas LP
Appliance Tagging Services Pty Ltd.
Aseguradora del Itsmo (ADISA) SA
AT&T
AT&T Mexico LLC
AT&T Mobility
AT&T Mobility Puerto Rico
Atmos Energy Corp.
Avid Waste Systems Inc.
BES Commercial Electricity Ltd.
Beverly Hills, City of (CA), Utility Billing
Blue Sat Servicios Administrativos de
    Telecomunicaciones SA
Charter Communications Inc.
Columbia Power & Water Systems
Columbus Networks de Costa Rica SRL
Comcast Corp.
Comision Federal de Electricidad (CFE)
Compania Nacional de Fuerza y Luz SA
Condominio Escazu Village Vertical
    Comercial Residencial y de Oficinas
conEdison
Contact Energy Ltd.
Corporate Services Consultants LLC
Costa Rica Internet Service Provider SA
Cox Business
CTS Norte SL
DCM Management The Crossings
EDF Energy Ltd.
Entrust Energy Payment Center
Everflow Ltd.
Eversource Energy
Excell Network Solutions Ltd.
Florida Power & Light Co.

Ford Fuels Ltd.
FPL
Frontier
Georgia Natural Gas Co.
Georgia Power Co.
Globalgig
GoTo Communications Inc.
Granite Telecommunications
Hezelaer Energy Service
Holaluz Clidom SA
IBP Suites LLC
Instituto Costarricense de Electricidad
Junta Administrativa del Servicio Electrico
    Municipal de Cartago (JASEC)
Knightguard Ltd.
LACNIC
Level 3 Communications
Liberty Mobile Puerto Rico
Lubbock, City of (TX), Utilities
Maetrics Ltd.
Mean Green Pest Pros
Metro Water Services
Metropolitan Realty Co. LP
Millicom Cable Costa Rica SA (TIGO)
Nashville Electric Service
Niagara Regional Broadband Network Ltd.
NV Energy Inc.
NW Met LP
O'Keefe Group LLC, The
Origin
Pacific Workplaces Walnut Creek
Parque 506 SA
PECO Inc.
Pedernales Electric Cooperative Inc.
Pepco
PG&E Corp.
Philadelphia Gas Works
Philly-Wide Disposal Co.
Piedmont Natural Gas
Plant Tours Communications Co.
Plaza Chipinque AC
Potomac Electric Power Co.

Reliant Energy Retail Services LLC
Republic Services Inc.
Retail Utilities Solutions Ltd.
Rhythm Ops LLC
Safety-Kleen Inc.
Shaw Business Solutions
Shepherd Investors LP
Sierra Wireless America
SmartestEnergy Ltd.
Southern California Edison Co.
Spectrum
Spire Inc.
SSE Airtricity Ltd.
Stratford CCH Ltd.
Stratford Utilities Ltd.
Tampa Electric Co.
TANGOE US Inc.
TECO
TECO Energy Inc.
Telecable Empresarial
Time Warner Cable
Urbanizadora HJH del Este SA
Utility Billing Services
Veolia ES Technical Solutions LLC
Veolia Recycling & Recovery Pty Ltd.
Verizon
Verizon Wireless
Virgin Media Ireland Ltd.
Waste Management of Nashville Hauling
White City CCH Ltd.
Windstream Services LLC
WM Corporate Services Inc.
Ziggo Zakelijk Services BV

**Schedule 2**

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| ABB Inc. | Utility Providers |
| ACC Business | Utility Providers |
| Aetna Life Insurance Company | Top 60 Vendors and Unsecured Creditors |
| Amazon Web Services, Inc. | Top 60 Vendors and Unsecured Creditors |
| Ameren Missouri | Utility Providers |
| Aristeia Capital | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| AS Birch Grove | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| AT&T | Utility Providers |
| AT&T Mexico LLC | Utility Providers |
| AT&T Mobility | Utility Providers |
| AT&T Mobility Puerto Rico | Utility Providers |
| Bank of America NA | Banks |
| Birch Grove | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| Beazley PLC | Insurance |
| BlackRock Institutional Trust Co. NA | Equity Shareholders |
| Charter Communications Inc. | Utility Providers |
| Comcast Corp. | Utility Providers |
| Commission Junction | Top 60 Vendors and Unsecured Creditors |
| Coupa Software Inc. | Top 60 Vendors and Unsecured Creditors |
| Cox Business | Utility Providers |
| CVS Pharmacy Inc. | Landlords |
| Davidson Kempner Capital Management LP | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| Deutsche Bank AG | Banks |
| Ernst & Young LLP | Top 60 Vendors and Unsecured Creditors |
| Florida Power & Light Co. | Utility Providers |
| Frontier | Utility Providers |
| FTI Consulting Inc. | Debtor and Creditor Restructuring Professionals |
| Google Inc. | Top 60 Vendors and Unsecured Creditors |
| Hewlett-Packard Financial Services Co. | Landlords |
| HPS Investment Partners LLC | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| Integer Inc. | Landlords |
| JPMorgan Chase & Co. | Banks |
| Land Securities Trinity Ltd. | Landlords |
| Lazard Ltd. | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| Multi Packaging Solutions Inc. | Top 60 Vendors and Unsecured Creditors |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| PECO Inc. | Utility Providers |
| PG&E Corp. | Utility Providers |
| Piedmont Natural Gas | Utility Providers |
| Potomac Electric Power Co. | Utility Providers |
| Prologis Targeted US Logistics Fund LP | Landlords |
| Redwood Capital | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| Reliant Energy Retail Services LLC | Utility Providers |
| Salesforce.com | Top 60 Vendors and Unsecured Creditors |
| SDC Canada Inc. | Debtor and Non Debtor Affiliates |
| SDC Financial LLC | Debtor and Non Debtor Affiliates |
| SDC Holding LLC | Debtor and Non Debtor Affiliates |
| SDC Plane LLC | Debtor and Non Debtor Affiliates |
| SDC U.S. SmilePay SPV | Debtor and Non Debtor Affiliates |
| ServiceNow Inc. | Top 60 Vendors and Unsecured Creditors |
| Shopify | Top 60 Vendors and Unsecured Creditors |
| Smile Dentistry of Puerto Rico PC | Debtor and Non Debtor Affiliates |
| Smile Dentistry of Hawaii PC | Debtor and Non Debtor Affiliates |
| Smile of Arizona PC | Debtor and Non Debtor Affiliates |
| Smile of Colorado PC | Debtor and Non Debtor Affiliates |
| Smile of Florida PA | Debtor and Non Debtor Affiliates |
| Smile of Georgia PC | Debtor and Non Debtor Affiliates |
| Smile of Minnesota PC | Debtor and Non Debtor Affiliates |
| Smile of New Jersey PA | Debtor and Non Debtor Affiliates |
| Smile of Ohio Inc. | Debtor and Non Debtor Affiliates |
| Smile of Oklahoma PC | Debtor and Non Debtor Affiliates |
| Smile of Pennsylvania PC | Debtor and Non Debtor Affiliates |
| Smile of Rhode Island PC | Debtor and Non Debtor Affiliates |
| Smile of South Dakota PC | Debtor and Non Debtor Affiliates |
| Smile of Tennessee PC | Debtor and Non Debtor Affiliates |
| Smile of Vermont PC | Debtor and Non Debtor Affiliates |
| Smile of Washington, D.C. PC | Debtor and Non Debtor Affiliates |
| Smile of Wyoming PC | Debtor and Non Debtor Affiliates |
| Smile of Washington, D.C. PC | Debtor and Non Debtor Affiliates |
| SmileDirectClub AUS Pty. Ltd. | Debtor and Non Debtor Affiliates |
| SmileDirectClub DEU GmbH | Debtor and Non Debtor Affiliates |
| SmileDirectClub Foundation | Debtor and Non Debtor Affiliates |
| SmileDirectClub FR SARL | Debtor and Non Debtor Affiliates |
| SmileDirectClub HK Ltd. | Debtor and Non Debtor Affiliates |
| SmileDirectClub HK Ltd., Taiwan Branch | Debtor and Non Debtor Affiliates |
| SmileDirectClub Inc. PAC | Debtor and Non Debtor Affiliates |
| SmileDirectClub IRL Ltd. | Debtor and Non Debtor Affiliates |
| SmileDirectClub Mexico Servicios S. de RL de CV | Debtor and Non Debtor Affiliates |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| SmileDirectClub Mexico S. de RL de CV | Debtor and Non Debtor Affiliates |
| SmileDirectClub NLD BV | Debtor and Non Debtor Affiliates |
| SmileDirectClub NZ | Debtor and Non Debtor Affiliates |
| SmileDirectClub Singapore Pte. Ltd. | Debtor and Non Debtor Affiliates |
| SmileDirectClub Spain SL | Debtor and Non Debtor Affiliates |
| SmileDirectClub UK Ltd. | Debtor and Non Debtor Affiliates |
| SmileDirectClub Inc. | Debtor and Non Debtor Affiliates |
| SmileDirectClub LLC | Debtor and Non Debtor Affiliates |
| SmileFarm LLC | Debtor and Non Debtor Affiliates |
| Smiles Made Here of Arkansas PA | Debtor and Non Debtor Affiliates |
| Smiles Made Here of Australia Pty. Ltd. | Debtor and Non Debtor Affiliates |
| Smiles Made Here of Indiana PC | Debtor and Non Debtor Affiliates |
| Smiles Made Here of Mexico SC | Debtor and Non Debtor Affiliates |
| Smiles Made Here of New Hampshire PC | Debtor and Non Debtor Affiliates |
| Smiles Made Here of Texas PC | Debtor and Non Debtor Affiliates |
| Smiles Made Here of UK Ltd. | Debtor and Non Debtor Affiliates |
| Smiles of Australia Pty. Ltd. | Debtor and Non Debtor Affiliates |
| Smiles of Costa Rica SRL | Debtor and Non Debtor Affiliates |
| Smiles of Ireland | Debtor and Non Debtor Affiliates |
| Smiles of Netherlands BV | Debtor and Non Debtor Affiliates |
| Smiles of New Zealand | Debtor and Non Debtor Affiliates |
| Smiles of Spain SLP | Debtor and Non Debtor Affiliates |
| Southern California Edison Co. | Utility Providers |
| Spectrum | Utility Provider |
| The Vanguard Group | Equity Shareholders |
| Time Warner Cable | Utility Providers |
| Twilio Inc. | Top 60 Vendors and Unsecured Creditors |
| UPS Supply Chain Solutions Inc. | Top 60 Vendors and Unsecured Creditors |
| Verizon | Utility Providers |
| Verizon Wireless | Utility Providers |
| Virgin Media Ireland Ltd. | Utility Providers |
| Walgreen Co. | Landlords |
| Wal-Mart Canada Corp. | Landlords |
| Waste Management of Nashville Hauling | Utility Providers |
| Westrock CP LLC | Top 60 Vendors and Unsecured Creditors |
| WeWork Inc. | Landlords |
| WeWork Paris I Tenant SAS | Landlords |
| WeWork PHL | Landlords |
| Whitebox Advisors LLC | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| Wilmington Trust NA | Top 60 Vendors and Unsecured Creditors |
| WM Corporate Services Inc. | Utility Providers |

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Wolverine Asset Management LLC | Lenders, Agents, Indenture Trustees, and/or Other Debtholders |
| XL Specialty Insurance Co. | Insurance |

**Schedule 3**

| Potential Party In Interest | Relationship to Debtors |
|---|---|
| Aetna Life Insurance Co. | Top 60 Vendors and Unsecured Creditors |
| American Express | Top 60 Vendors and Unsecured Creditors |
| AT&T | Utility Providers |
| AT&T Mexico LLC | Utility Providers |
| AT&T Mobility | Utility Providers |
| AT&T Mobility Puerto Rico | Utility Providers |
| City of Los Angeles (CA) | Taxing Authorities |
| City of Los Angeles (CA), Department of Treasurer and Tax Collector | Taxing Authorities |
| Comcast Corp. | Utility Providers |
| Ernst & Young LLP | Top 60 Vendors and Unsecured Creditors |
| FedEx | Top 60 Vendors and Unsecured Creditors |
| JPMorgan Chase & Co. | Banks |
| Kirkland & Ellis | Debtor and Creditor Restructuring Professionals |
| Latham & Watkins LLP | Debtor and Creditor Restructuring Professionals |
| Level 3 Communications | Utility Providers |
| Paul Weiss Rifkind Wharton & Garrison LLP | Debtor and Creditor Restructuring Professionals |
| Pricewaterhouse Coopers LLP | Debtor and Creditor Restructuring Professionals |
| Salesforce.com | Top 60 Vendors and Unsecured Creditors |
| Skadden Arps Slate Meagher & Flom LLP | Top 60 Vendors and Unsecured Creditors |
| Spectrum | Utility Providers |
| Sullivan & Cromwell LLP | Top 60 Vendors and Unsecured Creditors |
| Time Warner Cable | Utility Providers |
| United States, Government of the, Department of the Treasury | Taxing Authorities |
| Verizon | Utility Providers |
| Verizon Wireless | Utility Providers |
| WeWork Inc. | Landlords |
| WeWork Paris I Tenant SAS | Landlords |
| WeWork PHL | Landlords |
| Windstream Services LLC | Utility Providers |